Dear Representative John:
This office is in receipt of your letter dated September 24, 1999 requesting an opinion requiring interpretation of La. R.S. 27:301 B. (8). Your question is whether an area within a licensed video poker establishment, i.e. Delta Downs, leased out to a third party for the purpose of conducting charitable games of chance, would be considered part of the "premises" for purposes of the Video Draw Poker Devices Control Law, La. R.S.27:301 et seq.
It should be noted first that there do not appear to be any specific statutory prohibitions to the operation of these two types of gaming activity in the same facility. The Charitable Raffles, Bingo and Keno Licensing Law, La. R.S. 4:701 et seq., formerly La. R.S. 33:4861.1 et seq. contains no provisions which address this issue. The language which must be interpreted in analyzing this question is the definition of "licensed establishment" as contained in La. R.S. 27:301 B. (8) under the Video Draw Poker Devices Control Law, which provides in its entirety:
 (8) "Licensed establishment" means an establishment that has a Class A-General retail permit or a Class A-Restaurant permit as defined in Part II of Chapter 1 or Part II of Chapter 2 of Title 26 of the Louisiana Revised Statutes of 1950, for the sale of alcoholic beverages for on-premises consumption or a Louisiana state racing commission licensed race track, parimutuel wagering facility, or offtrack wagering facility, or a qualified truck stop facility as defined in R.S. 27:306. Licensed establishment shall not include any premises leased to or utilized by a bona fide nonprofit organization for the conducting of charitable gaming nor any convenience store, quick-stop, food-mart, service station, grocery store, barber shop, laundromat/washateria, package or discount liquor/cigarette establishment, movie theater, or beauty shop.
The definition of "licensed establishment", while not containing an express prohibition of conducting charitable and video gaming in the same facility, appears to implicitly prohibit video poker devices from being operated in a charitable gaming facility since such facilities are by definition not susceptible of being licensed for the operation of video draw poker devices as a "licensed establishment". In addition to "bingo halls", the definition also prohibits the operation of video draw poker devices in convenience stores, service stations, and beauty salons, etc., regardless of whether such facilities meet the essential requirement of having an appropriate alcoholic beverage permit.
The definition of "licensed establishment" appears susceptible of more than one interpretation. First, as stated above, the definition seems to mean that certain types of facilities, eg. bingo halls, may not be licensed for the operation of video draw poker devices. Secondly however, the definition may be interpreted to mean that a licensed establishment may not "include" charitable gaming activities on its premises. The legislative intent appears to be to prohibit the licensure of certain types of establishments, i.e. to restrict licensure to bars, lounges, and restaurants with the appropriate alcoholic beverage permit and not to businesses which, although perhaps capable of obtaining an alcoholic beverage permit, are not actually bars, lounges or restaurants as generally accepted.
With respect to bingo halls, it appears the legislature intended to protect charitable organizations by prohibiting a new form of gaming activity in charitable gaming facilities which would directly compete with charitable gaming activities and which would not inure to the charitable organization's benefit.
In addition to the statutory definition of "licensed establishment", LAC 42:XI.2403 A. contains a definition of "premises" which means "land together with all buildings, improvements, equipment, and personal property located thereon which is controlled by a licensee, and associated with video gaming activities authorized by the act".
Thus, while the legislature apparently intended to prohibit the operation of video draw poker devices in charitable gaming facilities, were Delta Downs to lease a portion of its facility for the purpose of charitable gaming activities, physical separation of the business would seem essential. Otherwise, if the gaming operations shared a common facility or area within a facility, the intent of the legislation would be thwarted, i.e. video poker machines would be effectively operating in a charitable gaming facility.
 LAC 42:XI.2415 D.3 provides:
 3. A licensed establishment which is connected by a doorway or other opening to any other business establishment whether or not such other establishment is eligible for licensing by the division shall:
 a. have a door or doors between the licensed establishment and the other entity which shall automatically close;
 b. have separate outside entrance for patrons such that an individual patron may enter each establishment from the exterior of the building;
 c. keep business records and books that are separate from those of the other entity; and
 d. have personnel who work solely for the licensed establishment and not for the other entity during all hours of operation of the licensed establishment.
These provisions are mandatory and would appear clearly applicable to the proposed lease and operations referenced in your letter of September 24, 1999.
In conclusion, it is the opinion of this office that a licensed establishment under La. R.S. 27:301 et seq. may lease a portion of its premises for the purpose of conducting charitable gaming pursuant to La. R.S. 4:701 et seq. provided that the requirements of LAC 42:XI.2415 D.3. are fully complied with.
Hopefully, this opinion addresses your concerns. If you have additional questions, please do not hesitate to call.
Sincerely yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: Thomas A. Warner, III Assistant Attorney General
TAW/cms